FILED

2016 Sep-21  PM 01:44
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | | |
|---|---|---|
| CAROLYN MESSER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:15-cv-584-TMP |
| | ) | |
| CAROLYN W. COLVIN, Acting | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## MEMORANDUM OPINION

### I.      Introduction

The plaintiff, Carolyn Messer, appeals from the decision of the Commissioner of the Social Security Administration ("Commissioner") denying her application for Disability Insurance Benefits ("DIB").   Ms. Messer timely pursued and exhausted her administrative remedies, and the decision of the Commissioner is ripe for review pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3).   The parties have consented to the jurisdiction of the undersigned magistrate judge pursuant to 28 U.S.C. § 626(c).   Accordingly, the court enters this memorandum opinion.

Ms. Messer was 55 years old at the time of the Administrative Law Judge's ("ALJ's") decision, and she has a limited education. (Tr. at 31).[1]  Her past work experience is as a certified nurse's assistant.  (Tr. at 31).  Ms. Messer claims that she became disabled on April 26, 2012, due to Crohn's disease and an altered mental state.  (Tr. at 132).

When evaluating the disability of individuals over the age of eighteen, the regulations prescribe a five-step sequential evaluation process.  *See* 20 C.F.R. §§ 404.1520, 416.920; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001).  The first step requires a determination of whether the claimant is "doing substantial gainful activity."  20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i).  If he or she is, the claimant is not disabled and the evaluation stops.  *Id*.  If he or she is not, the Commissioner next considers the effect of all of the physical and mental impairments combined.  20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).  These impairments must be severe and must meet the durational requirements before a claimant will be found to be disabled.  *Id*.  The decision depends upon the medical evidence in the record.  *See Hart v. Finch*, 440 F.2d 1340, 1341 (5th Cir. 1971).  If the claimant's impairments are not severe, the analysis stops.  20 C.F.R.

---

[1]  The records indicate that Ms. Messer attended school until the 11th grade.   (Tr. at 299).

§§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii).   Otherwise, the analysis continues to step three, which is a determination of whether the claimant's impairments meet or equal the severity of an impairment listed in 20 C.F.R. pt. 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).   If the claimant's impairments fall within this category, she will be found disabled without further consideration.   *Id.* If she does not, a determination of the claimant's residual functional capacity ("RFC") will be made and the analysis proceeds to the fourth step.   20 C.F.R. §§ 404.1520(e), 416.920(e).   Residual functional capacity is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his or her impairments.   20 C.F.R. § 404.1545(a).

The fourth step requires a determination of whether the claimant's impairments prevent her from returning to past relevant work.   20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).   If the claimant can still do her past relevant work, the claimant is not disabled and the evaluation stops.   *Id.*   If the claimant cannot do past relevant work, then the analysis proceeds to the fifth step. *Id.*   Step five requires the court to consider the claimant's RFC, as well as the claimant's age, education, and past work experience, in order to determine if she can do other work.   20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).   If the claimant can do other work, the claimant is not disabled.   *Id.*   The burden of demonstrating

that other jobs exist which the claimant can perform is on the Commissioner; and, once that burden is met, the claimant must prove her inability to perform those jobs in order to be found to be disabled.   *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999).

Applying the sequential evaluation process, the ALJ found that Ms. Messer has not been under a disability within the meaning of the Social Security Act from the date of onset (April 26, 2012) through the date of his decision.   (Tr. at 32-33). He determined that Ms. Messer has not engaged in substantial gainful activity since the alleged onset of her disability.   (Tr. at 23).   According to the ALJ, claimant's Crohn's disease, Raynaud's syndrome, hypertension, insomnia, and depression are considered "severe" based on the requirements set forth in the regulations.   (*Id.*) He further determined that these impairments neither meet nor medically equal any of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.   (Tr. at 24). The ALJ did not find Ms. Messer's allegations to be totally credible (Tr. at 27), and he determined that the claimant has the residual functional capacity to perform a full range of work at all exertional levels. subject to certain nonexertional limitations. (Tr. at 26).   The ALJ found that the claimant should be subject to the following nonexertional limitations: that she be given simple but not complex tasks; that she can maintain attention and concentration for two hours at a time to complete an

eight-hour workday with customary rest breaks; that her contact with the public should be infrequent and non-intense; that she would do best in a well-spaced work environment; that her supervision should be casual and supportive; that changes to the work setting should be gradual and well-explained; and that she may need help with long-term plans and goals but not short-term plans and goals.   (Tr. at 26).

According to the ALJ, Ms. Messer is unable to perform any of her past relevant work.  She was an "individual closely approaching advanced age" at the date of alleged onset, and she has a limited education and is able to communicate in English, as those terms are defined by the regulations. (Tr. at 31).   He determined that "transferability of skills is not material to the determination of disability" in this case.   (*Id*.)    The ALJ found that Ms. Messer has the residual functional capacity to perform a full range of work at all exertional levels, subject to nonexertional limitations.   (Tr. at 32).   The ALJ found that there are a significant number of jobs in the national economy that she is capable of performing, such as bundler, line packer, and stocker.   (*Id*.)   The ALJ concluded his findings by stating that the claimant is "not disabled" under the Social Security Act.   (*Id*.)

## II.    Standard of Review

This court's role in reviewing claims brought under the Social Security Act is a narrow one.   The scope of its review is limited to determining (1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and (2) whether the correct legal standards were applied.   *See Richardson v. Perales*, 402 U.S. 389, 390, 401 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002).   The court approaches the factual findings of the Commissioner with deference, but applies close scrutiny to the legal conclusions. *See Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996).   The court may not decide facts, weigh evidence, or substitute its judgment for that of the Commissioner.   *Id.*   "The substantial evidence standard permits administrative decision makers to act with considerable latitude, and 'the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'"   *Parker v. Bowen*, 793 F.2d 1177, 1181 (11th Cir. 1986) (Gibson, J., dissenting) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).   Indeed, even if this court finds that the evidence preponderates against the Commissioner's decision, the court must affirm if the decision is supported by substantial evidence.   *Miles*, 84 F.3d at 1400. No decision is automatic, however, for "despite this deferential standard [for review

Page **6** of **18**

of claims] it is imperative that the court scrutinize the record in its entirety to determine the reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622, 624 (11th Cir. 1987).   Moreover, failure to apply the correct legal standards is grounds for reversal.   *See Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984).

## III.   Discussion

The claimant makes four arguments for reversal of the Commissioner's determination.   First, Ms. Messer alleges that the ALJ's decision should be reversed and remanded because the ALJ failed to give proper weight to the primary treating physician's opinion, and substituted his own opinion for the doctor's opinion. (Doc. 13, pp. 17-27).   She further asserts that the ALJ's decision regarding her RFC is not supported by substantial evidence (doc. 13, pp. 27-37), and, third, that the ALJ improperly failed to require a psychiatric review technique form with resepct to her depression (doc. 13, p. 37).   Finally, the claimant alleges that the denial of benefits is not supported by a consideration of all of the evidence because the statement of her husband submitted to the Appeals Council was not considered.   (Doc. 13, pp. 37-41).   The Commissioner asserts that the ALJ properly evaluated the medical evidence, evaluated the claimant's RFC in accordance with the regulations, and that the Appeals Council properly denied the claimant's request for review.   (Doc. 16).

### A.   Treating Physician's Assessment

The claimant asserts that the ALJ failed to give proper weight to the opinion of her treating physician, Dr. Henry Born.   Dr. Born treated Ms. Messer for many years, and opined on September 5, 2012, that she would "not be able to work in the future."  (Tr. at 308).   He further stated that she "suffers from Crohn's disease, hypertension, anxiety, depression, chronic obstructive pulmonary disease (COPD), and nicotine abuse."  (*Id.*)   Dr. Born also gave a Physician's Statement, initially dated May 13, 2013, but then updated on May 16, 2013[2], in which he stated that Ms. Messer suffers from the "moderately severe" conditions of rheumatoid arthritis, Crohn's disease, and COPD.   Although he opined that she needed continuous personal care to remind her to take her medications, he also assessed her prognosis as being "fair."  (Tr. at 333).[3]   The ALJ expressly gave Dr. Born's assessment little

---

[2]      As completed on May 13, Dr. Born reported initially that he had not seen Ms. Messer since August of 2012.   However, she came in for an examination on May 15, resulting in the updated form on May 16, 2013.   Dr. Born's office note from the May 15 examination states, "The patient is stable and there is nothing much new.   She is still trying to get on disability.   She is getting a little weaker. She wants someone to sit for her, but she really does not have any specific problems .   She is walking pretty well."   (Tr. at 335).   It is significant to note that, at the August 2012 examination of Ms. Messer by Dr. Born, he wrote, "The patient is hoping to get on disability.   She has R.D. Pitts working on her case and he is optimistic.   In the meantime, she needs medications.   She has the rheumatoid arthritis and she has anxiety.   She also has hypertension and a past history of Crohn's disease, which is kind of inactive now."   (Tr. at 336).

[3]      In addition to these statements, Dr. Born has written a number of "To Whom It May Concern" letters over the years, expressing that the claimant suffers from Crohn's disease.   (Tr. at 329-331).   These also state in substance that the claimant has Crohn's disease that is "fairly

weight, based upon his determination that the physician's statements regarding disability were inconsistent with his prior statements and with his own treatment records, which showed that Ms. Messer's Crohn's disease was "fairly well controlled."  (Tr. at 30).[4]

Just a month before the alleged onset date of April 26, 2012, Dr. Born reported that Ms. Messer was "stable" and "doing well."  (Tr. at 232).   About four months after the alleged onset date, Dr. Born stated that Ms. Messer's Crohn's disease was "kind of inactive now."  (Tr. at 336).   In May of 2013, more than a year after the alleged onset date, Dr. Born described Ms. Messer as "stable" and stated that "there is nothing much new," but that she "wants someone to sit for her, but she really does not have any specific problems."  (Tr. at 335).

Under prevailing law, a treating physician's testimony is entitled to "substantial or considerable weight unless 'good cause' is shown to the contrary." *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1159 (11th Cir. 1997)(internal quotations omitted).  The weight to be afforded a medical opinion

---

well-controlled," but that she has "flare ups" that involve bouts of uncontrolled diarrhea, which cause her to miss work "on an intermittent basis."

[4]     Dr. Born does not base his opinion that Ms. Messer is unable to work upon any effects of her depression, hypertension, or any other condition except Crohn's disease.   It appears that his opinion rests solely upon the symptoms of her Crohn's disease, specifically bouts of diarrhea that require her to miss 3-4 days of work.   (Tr. at 290).

regarding the nature and severity of a claimant's impairments depends, among other things, upon the examining and treating relationship the medical source had with the claimant, the evidence the medical source presents to support the opinion, how consistent the opinion is with the record as a whole, and the specialty of the medical source.  *See* 20 C.F.R.  §§ 404.1527(d), 416.927(d).  "Good cause" exists for an ALJ to not give a treating physician's opinion substantial weight when the "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) ... was conclusory or inconsistent with the doctor's own medical records."  *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) citing *Lewis*, 125 F.3d at 1440; *see also Edwards v. Sullivan*, 937 F.2d 580, 583-84 (11th Cir. 1991)(holding that "good cause" exists where the opinion was contradicted by other notations in the physician's own record).

In this case, Dr. Born's opinion that the claimant is unable to work due to her Crohn's disease is inconsistent with his own records.    The ALJ noted that Dr. Born consistently recorded his impressions that Ms. Messer's Crohn's disease was "fairly well controlled."   Dr. Born further described Ms. Messer as having "some bouts of diarrhea from time to time," and noted that he would provide work excuses when the patient had these "flare-ups."   The records further show that during 2011, he provided excuses for three "flare-ups," which caused Ms. Messer to miss a total of

six days of work for the entire year.   The records do not, however, reflect that Ms. Messer's chronic illness worsened during 2012, or that her condition otherwise deteriorated.   Indeed, his August 2012 examination showed that her Crohn's disease was "kind of inactive now."   (Tr. at 336).

Opinions such as whether a claimant is disabled, the claimant's residual functional capacity, and the application of vocational factors "are not medical opinions,... but are, instead, opinions on issues reserved to the Commissioner;" thus the court "may not decide facts anew, reweigh the evidence, or substitute [its] judgment for that of the Commissioner." *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005).   The court instead looks to the doctors' evaluations of the claimant's condition and the medical consequences thereof, not their opinions of the legal consequences of his [or her] condition." *Lewis*, 125 F.3d at 1440.   Such statements by a physician are relevant to the ALJ's findings, but they are not determinative, because it is the ALJ who bears the responsibility of assessing a claimant's residual functional capacity. *See, e.g.*, 20 C.F.R.   § 404.1546(c).

In this case, the ALJ carefully reviewed the treating physician's records, and heeded the *medical* opinions therein.   It is only the opinion regarding Ms. Messer' capacity to do work that was given little weight.   The ALJ clearly articulated "good cause" for the limited weight he gave to Dr. Born's ultimate disability assessment.

Notwithstanding the letters and Physician's Statement, Dr. Born's clinical notes clearly indicate that the claimant's Crohn's disease is controlled, almost "inactive," and causes only a minimal number of missed workdays.   Therefore, the ALJ did not err in failing to give the treating physician's opinion more weight.[5]

## B.  Residual Functional Capacity

The claimant asserts that the ALJ failed to properly assess her RFC to perform a full range of work in that he did not complete a function-by-function analysis.   It has been determined that the ALJ is not required to "specifically refer to every piece of evidence in his decision" so long as the decision provides enough analysis for the court to conclude that the ALJ considered the claimant's medical condition as a whole.   *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005).   In this case, the ALJ looked not only at the records from Dr. Born and from treating physicians who saw the claimant at the hospital, but he also had the assessment of Jack Bentley, Jr., Ph.D., who conducted a psychological examination of Ms. Messer on June 27, 2012. While he acknowledged Ms. Messer's depression, insomnia, Crohn's disease,

---

[5]      Plaintiff's counsel's argument that the ALJ improperly failed to recontact Dr. Born or seek other medical sources is without merit.   While counsel suggests that the ALJ had a duty to re-contact Dr. Born, such a duty arises only where the evidence is insufficient to make a disability decision.   *Shaw v. Astrue*, 392 Fed. Appx. 684, 688-89 (11th Cir. 2008).   In this case, there was no finding that the medical evidence was inadequate or incomplete; simply that the medical evidence did not support the claim of disability.   The duty to re-contact does not arise simply because the ALJ accords the evidence limited weight.   20 C.F.R. § 404.1520(b).

Raynaud's Syndrome, and hospitalizations for an altered mental state, Dr. Bentley determined that she is able to read, socialize with family, and complete her activities of daily living ("ADLs") without assistance.   (Tr. at 300).   He further noted that she had no impairment in psychomotor skills and was alert and oriented.

Plaintiff does not allege any particular "functional limitations" that the ALJ failed to consider, and plaintiff has not alleged that she has any trouble walking, sitting, standing, reaching, lifting, climbing, stooping, comprehending, hearing, seeing, or any other specific function that is generally associated with the RFC analysis.   The ALJ specifically gave significant weight to the opinion of Lee Blackmon, the state agency medical consultant, who determined that the claimant does not have any functional limitations from her impairments, and that her symptoms are well controlled with medication and her treatment regimen.   (Tr. at 31).

The ALJ discussed in some detail the physical and mental demands of gainful work, and the plausible physical and mental limitations that the record could reasonably support. The ALJ considered both the medical evidence and the claimant's own testimony in reaching the conclusion that neither Ms. Messer's physical nor mental impairments resulted in an inability to work.   The ALJ properly considered the evidence that Ms. Messer had been treated for depression and

anxiety, and provided a detailed analysis and reasoning.  Accordingly, the ALJ's determination regarding Ms. Messer's RFC is supported by substantial evidence and was both comprehensive and consistent with the applicable SSA rulings.  The objective medical and other evidence supports the ALJ's conclusion that the claimant's conditions did not cause disabling limitations and instead shows that she could perform work with some limitations.

### C.   Psychiatric Review Technique Form

Plaintiff argues that the ALJ's decision did not contain a Psychiatric Review Technique form, and that without such, it is improper under 20 C.F.R. § 404.1520a. The Commissioner did not specifically address this claim.   Even so, the court finds no merit in the plaintiff's argument.

The Eleventh Circuit Court of Appeals has made clear that the ALJ need not complete a Psychiatric Review Technique Form ("PRTF"), as long as the ALJ considers all of the factors in the PRTF's functional areas.   *Moore v. Barnhart*, 405 F.3d 1208, 1213 (2005).   In this case, the ALJ specifically considered: (1) activities of daily living; (2) social functioning; (3) concentration, persistence or pace; and (4) deterioration or decompensation in work or work-like settings, as is required by the regulations.  (Tr. at 24-25).   The ALJ also relied upon the assessment of Dr. Blackmon, a medical source who addressed the mental impairment.  (Tr. at 59).

The ALJ also relied upon the claimant's own description of her daily activities, including caring for herself and some light housecleaning and cooking (Tr. at 150, 152).  She does handicrafts with her granddaughter, who lives with her and her husband, and she occasionally goes to church.   Although she does not drive due to an automobile accident she had when younger, she rides with her husband to go grocery shopping.   (Tr. at 153).

*Moore* instructs that remand is not necessary so long as the ALJ "incorporate[s] the results of the technique into the findings and conclusions."   405 F.3d at 1213-14.   The ALJ carefully evaluated the "B Paragraph" factors in light of the record evidence.   Plaintiff's assertion that the documentation supporting the ALJ's conclusion is insufficient is therefore without merit.

### D.   Additional Evidence

Finally, the claimant asserts that the Appeals Counsel improperly failed to consider the new evidence presented on appeal, consisting of a letter from Ms. Messer's husband, Edmon Paul Messer.   (Tr. at 15-16).   As the Commissioner points out, the letter from Mr. Messer is not medical evidence, but only his observations of his wife's struggles with Crohn's disease, most of which occurred while she was still working.   He also recounts her difficult life experiences from childhood.

"[T]he claimant is allowed to present new evidence at each stage of this administrative process. *See* 20 C.F.R. § 404.900(b). The Appeals Council must consider new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.' *Id*. § 404.970(b)." Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). Thus new evidence that is material and chronologically relevant, first presented to the Appeals Council, requires the Council to assess whether, in light of all of the evidence, including the newly submitted evidence, the ALJ's decision is supported by substantial evidence. A reviewing court likewise is required to do the same. Id. at 1262.

While the ALJ could have considered the letter had it been offered prior to his decision, it is insufficient to support a finding that Ms. Messer is disabled and that the ALJ's determination was not supported by substantial evidence. The Appeals Council must review the ALJ's decision where "new and material evidence" results in a conclusion that the decision reached is "contrary to the weight of all the evidence now in the record." In this case, there is nothing to indicate that the Appeals Council failed to consider the claimant's husband's letter as part of all of the evidence in the case. One of the rules explicitly applied by the Appeals Council

was "We receive new and material evidence and [whether] the decision is contrary to the weight of all the evidence now in the record" (Tr. at 1), clearly indicating that the Appeals Council considered the newly-submitted evidence.

Even considering the letter, the ALJ's finding is supported by substantial evidence and comports with the statutes and regulations, and the Appeals Council did not err in denying Ms. Messer's request for review.   As pointed out, there is substantial medical evidence in the record that her Crohn's disease was "stable," "well-controlled," and even regarded as being "inactive."   Dr. Born's records reveal that claimant went many months between visits to him, and other medical providers did not document significant problems with claimant's Crohn's disease.   When she was assessed by Dr. Tariq at Quality of Life Health Services in September and October of 2012, he noted that she had a history of Crohn's, but was "[n]egative for constipation, diarrhea, or vomiting."  (Tr. at 317, 325).   The substantial medical evidence supports the ALJ's decision notwithstanding the letter submitted to the Appeals Council.

## IV.    Conclusion

Upon review of the administrative record, and considering all of Ms. Messer's arguments, the Commissioner's decision is AFFIRMED and the action is due to be DISMISSED WITH PREJUDICE.

DATED the 21st day of September, 2016.

_____
T. MICHAEL PUTNAM
UNITED STATES MAGISTRATE JUDGE